IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THERESA ANN ROBISON                                                     PLAINTIFF

                v.                          Civil No. 11-2154

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, Theresa Robison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

      The plaintiff filed her applications for DIB and SSI on January 2, 2009, alleging an onset date of September 1, 2007, due to obesity, a fatty tumor on the left leg, swelling in the hands and feet, difficulty breathing, headaches, lower back problems, dizzy/fainting spells, diabetes mellitus, hypertension, gastritis, and major depressive disorder. Tr. 11, 13, 41-51, 128-140, 155-156, 170-175, 177-184, 188, 191. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 72-83. An administrative hearing was held on February 22, 2010. Tr. 31-67. Plaintiff was present and represented by counsel.

      At the time of the hearing, Plaintiff was 43 years old and possessed a ninth grade education. Tr. 35. She had past relevant work "(PRW)" experience as a biscuit maker, fry cook, chef, and sandwich maker. Tr. 20, 35-41, 157-158.

On May 23, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's obesity, diabetes, hypertension, gastritis, and depression did not meet or equal any Appendix 1 listing. Tr. 13-16. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is unable to climb ladders, ropes and scaffolds, and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Further, the claimant must avoid concentrated exposure to extreme cold/heat and fumes, odors, dusts, gases and poor ventilation and must avoid moderate exposure to hazards (machinery, heights, etc.). Lastly, the claimant can perform work that involves only simple tasks with routine supervision and superficial contact with coworkers, supervisors and the general public.

Tr. 16. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as an assembler and machine tenderer. Tr. 21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 29, 2011. Tr. 1-4. Subsequently, plaintiff filed this action. Doc. # 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 9, 10.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

In the present case, Plaintiff presented additional evidence to the Appeals Council, which was reviewed and considered prior to the entry of an order denying a full review of the ALJ's opinion. Under

3

the regulations, when "a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and © relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). However, the timing of the evidence is not dispositive of whether the evidence is material. *Id.* Evidence obtained after an ALJ decision is material if it related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984).

Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992); *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir. 1992). Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th cir. 1994).

Here, Plaintiff complained of swelling in her left leg making it difficult for her to sit or stand for longer periods of time and problems with skin tags on her lower extremities. The evidence before the ALJ revealed complaints of swelling and pain in her lower extremities, but it appeared she sought no further treatment for these complaints after March 2009. Thus, the ALJ could find no evidence to support her complaints of disability related to her lower extremities. Plaintiff also voiced complaints of chronic gastritis and stomach related impairments. However, although severe, the ALJ also concluded that these impairments were not disabling. Following the entry of the ALJ's opinion, Plaintiff presented the following relevant medical records.

4

On March 2, 2010, Plaintiff exhibited a lot of swelling in her legs, and reported a lot of stress related to the illnesses of her husband and mother. Tr. 353. Her left lower extremity appeared slightly edematous as compared to the right. Nurse Practitioner Carmen Oxford ordered a venous doppler of this extremity, refilled her pain medication, gave her samples of Pristiq, and encouraged her to consider counseling through Western Arkansas Guidance Center. Tr. 353.

On March 8, 2010, Plaintiff reported leg and foot pain. Tr. 352. She noted some questionable firmness on her medial calf just distal to the knee on both sides, and indicated that she was taking care of her mother who was currently on hospice. Plaintiff was concerned this was taking a toll on her lower extremities. Nurse Oxford found her examination to be unchanged and diagnosed her with lower extremity discomfort and neuropathy. She ordered blood work to evaluate the etiology of the neuropathy, discontinued the Hydrochlorothiazide, prescribed Lasix, and added Neurontin to her medication regimen. Tr. 352.

On April 8, 2010, Plaintiff stated that she had developed a lot of joint pain, especially in her lower extremities. Tr. 351. She denied any precipitating injury or activity, and reported no difficulties walking. Plaintiff also reported continued problems with her stomach, and quite a bit of emotional distress related to the recent death of her mother. Nurse Oxford noted swelling and edema in the lower extremities. She ordered lab work to evaluate her uric acid level and prescribed Kapidex, Carafate, Reglan, and Hydrocodone. Nurse Oxford also increased her Lasix dosage to combat the peripheral edema. Tr. 351.

On April 13, 2010, Plaintiff continued to report swelling in her lower extremity, such that she had been placed on an increased dose of Lasix. Tr. 350. She had proceeded with some testing of the lower extremity, which had revealed fatty tumors just distal to each knee on the anterior calf. She stated that she had urinated quite a bit, but really had not noticed a decrease in the swelling. Plaintiff was trying to put her feet up when she was at home. Otherwise, she continued her routine activities. Nurse

Oxford diagnosed Plaintiff with continued peripheral edema. She prescribed continued Lasix therapy and ordered lab tests to monitor her potassium and HGBA1C levels. Nurse Oxford also ordered an ultrasound to evaluate Plaintiff's fatty tumors. Tr. 350.

On April 21, 2010, a venous doppler revealed no evidence of deep vein thrombus in either lower extremity. Tr. 413.

On June 10, 2010, Plaintiff voiced complaints of leg pain and gastritis. Tr. 349. She had been taking the medications previously prescribed, but continued to experience gastrointestinal discomfort. Her left calf pain also persisted, and Plaintiff had abnormal lesions on that calf, her right calf, and her upper extremities. Nurse Oxford noted the circular slightly raised papule appearing lesions present on the anterior calf of the left as well as on the right and the upper extremities. She diagnosed her with abnormal skin lesions with associated leg pain and gastritis. Nurse Oxford encouraged Plaintiff to keep her appointment with the gastroenterologist and referred her to a dermatologist. She also prescribed Hydrocodone to help with her discomfort. Tr. 349.

On August 25, 2010, Plaintiff complained of increased depression, stress, dyspnea, and "leg trouble." Tr. 348. She said she had not felt herself in the last few weeks. Due to financial constraints, Plaintiff had not been able to attend her gastroenterology appointment. Her examination was essentially unchanged from prior visits, although she did appear quite malaise. Nurse Oxford diagnosed her with a history of depression and peripheral neuropathy. She then increased her Neurontin dosage, ordered x-rays of her lumbar spine and hips, and switched her from Pristiq to Paxil. Tr. 348.

On August 28, 2010, x-rays of her lumbar spine revealed mild dextroscoliosis and mild degenerative changes. Tr. 410. Minimal acetabular spurs were also noted in her pelvis/hips. Tr. 410.

AO72A
(Rev. 8/82)

On December 14, 2010, Plaintiff reported problems with swelling in her eye with drainage, left upper abdominal pain, and pain under her left breast. Tr. 345. Nurse Oxford prescribed antibiotics to treat her eye infection and ordered a CT scan of her chest and abdomen. Tr. 345.

On January 20, 2011, Plaintiff underwent an EGD that revealed an esophageal hiatal hernia, small lower esophageal ring, and gastroduidenitis. Tr. 428-435. Esophageal dilation was also accomplished via a Boston Scientific Balloon Dilator. Tr. 428-435.

On January 27, 2011, Plaintiff underwent an upper endoscopy which revealed an esophageal hiatal hernia, lower esophageal ring, and enterogastritis and erosions. Tr. 442.

On March 11, 2011, Plaintiff complained of left breast pain that had been worsening over the previous two weeks. Tr. 343-344. She also reported problems with heartburn, nausea, and depression. An examination revealed an area on her left breast that was tender to palpation, but no abnormality was present. Nurse Oxford ordered an ultrasound. Tr. 343-344.

Given that Nurse Oxford diagnosed Plaintiff with neuropathy, ordered further testing to determine the etiology of her neuropathy, repeatedly noted edema in Plaintiff's lower extremities, and noted abnormal growths on her upper and lower extremities, we believe that remand is necessary to allow the ALJ to review this evidence. Had the evidence been before the ALJ prior to the issuance of his opinion, we do believe it would have impacted his RFC findings and his determination regarding Plaintiff's ability to perform work that exists in significant numbers in the national economy. *See Nelson,* 966 F.2d at 366. We believe that this evidence calls into question Plaintiff's ability to complete an 8-hour work-day without at least intermittently elevating her feet and legs, a limitation not included in the ALJ's present RFC and not presented in the hypothetical posed to the vocational expert. Accordingly, the case should be remanded to the ALJ for further consideration of this evidence.

Because the record is devoid of an RFC assessment from a treating physician, the ALJ is also directed to obtain an RFC assessment from Plaintiff's treating physician and/or his Nurse Practitioner,

7

Carmen Oxford, to assist him in determining Plaintiff's work-related abilities and limitations. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

IV.     **Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of June 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)